UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CHRISTINE N.,[1]

Plaintiff,

DECISION AND ORDER

-vs-

24-CV-0969-MAV

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

## INTRODUCTION

In October 2024, Christine N. ("Plaintiff") filed this action pursuant to 42 U.S.C. §§ 405(g), seeking judicial review of the Commissioner of the United States Social Security Administration's ("Commissioner") denial of her application for Disability Insurance Benefits ("DIB"). ECF No. 1. Both parties have submitted briefs presenting the action for decision.[2] For the reasons set forth below, Plaintiff's motion [ECF No. 9] is denied, and the Commissioner's motion [ECF No. 16] is granted.

## PROCEDURAL HISTORY

The Court assumes the reader's familiarity with the facts and procedural

[1] The Court's Standing Order issued on November 18, 2020, directs that, "in opinions filed pursuant to . . . 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

[2] Plaintiff has styled her request for relief a motion for summary judgment, while the Commissioner has submitted a motion for judgment on the pleadings. However, under Rule 5 of the Supplemental Rules for Social Security, and as contemplated by Rule 5.5 of the Local Rules of Civil Procedure, in the ordinary course "[t]he action is presented for decision by the parties' briefs," not by motion practice. In any event, the vehicle by which the parties have presented the action for decision does not substantively change the analysis. *See, e.g., William H. v. Comm'r of Soc. Sec.*, No. 1:21-CV-01142-EAW, 2023 WL 4445585, at *1 (W.D.N.Y. July 11, 2023) (finding that changes to the operative pleading to bring it into conformance with the Supplemental Rules did not change the analysis).

history in this case, and therefore addresses only those facts and issues which bear directly on the resolution of the motions presently before the Court.

## I. Plaintiff's Applications

Plaintiff filed her application for DIB in May 2020, alleging a disability onset date of December 13, 2019. Administrative Record ("AR"), 320,[3] ECF No. 3. She identified several impairments that she claimed limited her ability to work, including: ankylosing spondylitis; lumbar spondylosis; severe pain in back and hips; severe pain in feet, ankles, knees, and hands; and extreme fatigue caused by medications. AR 323. In December 2020, the Commissioner found that Plaintiff was "not disabled," and her claim for DIB payments was denied. AR 130–46. Plaintiff requested a reconsideration of the initial determination, and in March 2021 was again found "not disabled." AR 147–65.

## II. Plaintiff's Hearing Before the ALJ

After the Commissioner denied her applications at the initial level and on reconsideration, Plaintiff appeared in person on July 27, 2023 for a hearing before an Administrative Law Judge ("ALJ"). AR 47–129. In response to the ALJ's question as to what impairments Plaintiff's counsel believed to cause Plaintiff to be disabled, counsel responded as follows:

> Your Honor, she has a combination of medical impairments. She has severe arthritis throughout the body, she has . . . . degenerative disc disease in her hips and in her back, and in her cervical spine. She has moderate to prominent canal stenosis and prominent bilateral neuroforaminal narrowing . . . . She has . . . . [d]egenerative mid-foot

[3] The page references from the transcripts are to the bates numbers inserted by the Commissioner, not the pagination assigned by the Court's CM/ECF electronic filing system.

> bilaterally. The first metatarsophalangeal joint bilaterally and . . . also of the second metatarsophalangeal of the left foot . . . . [S]he has degenerative disease of her hands, especially in her right and left bilateral index fingers. She has lupus, she has Sjogren's disease. She has severe pain, fatigue, anxiety, sleep disturbance, interference with focus and concentration, due to her pain. She uses a cane for balance. She also has numbness in her hands and her feet.

AR 57–58.

Plaintiff testified that she stopped working on December 13, 2019 because she had been advised by Buffalo Spine and Sports Medicine to look into short-term and long-term disability, and she wasn't able to perform her job due to pain, fatigue, and anxiety. AR 73, 77. She said she is on a "pretty long list of medications" for her ailments, and gets monthly infusions of Saphnelo "for inflammation and pain and the flares that come with lupus." AR 79. She gets cortisone shots in her index fingers every three months for her arthritis (AR 83), applies ice packs to her hands for 20 minutes at a time several times per day (AR 86–87), has a tendency to drop things (AR at 88, 95), has difficulty blowing her nose (AR 96), and has to have her husband take her grocery shopping and do all of the lifting (*Id.*, AR 109).

With respect to her back and hips, Plaintiff testified that her pain never goes away and prevents her from holding even light items in front of her, that she has to spend much of her time lying down because standing and sitting aggravates the pain, and that no one prescribed her a cane but she had been using it for balance for approximately eight months. AR 62, 97–98. She estimates that her various ailments require her to have doctor visits at least 32 times a year. AR 114.

The ALJ also heard testimony at the hearing from vocational expert Dawn

Blythe (the "VE"). AR 117–28. When asked if there were jobs in the national economy that could be performed by a hypothetical claimant with the residual functional capacity[4] ("RFC") identical to that which Plaintiff was ultimately determined to have, the VE opined that the hypothetical claimant could perform work as a document preparer, a callout operator, and a telephone quotation clerk. AR 120–21. However, the VE testified that there was no work that such a claimant could perform if she would miss work more than one day per month, exceeded 10 percent time off task, or had to lay down for at least an hour on the job. AR 122–25.

### III. The ALJ's Decision

On November 27, 2023, the ALJ issued a decision finding that Plaintiff was not disabled, and therefore did not qualify for DIB. AR 39.

At step one of the Commissioner's "five-step, sequential evaluation process,"[5] the ALJ found that Plaintiff had not engaged in substantial gainful activity since

---

[4] "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545.

[5] The Social Security Administration has outlined a "five-step, sequential evaluation process" that an ALJ must follow to determine whether a claimant has a "disability" under the law:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014); citing, *inter alia*, 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)). The claimant bears the burden of proof for the first four steps of the process. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

December 13, 2019. AR 19.

At step two, the ALJ determined that Plaintiff had the following severe impairments: osteoarthritis, lupus, cervical disc disease with stenosis, foraminal narrowing in the thoracic and lumbar spine, recent recurrence of mild bilateral carpal tunnel syndrome, and recent onset of mild left cubital tunnel syndrome. AR 21.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App'x 1 ("the Listings"). AR 26. In making this assessment, the ALJ considered the musculoskeletal impairments in Listings 1.15 (disorders of the spine due to compromised nerve roots) and 1.18 (abnormality of a major joint), because she did not meet the criteria of demonstrating she was prescribed an assistive device or was sufficiently limited in the use of her upper extremities. AR 26. Additionally, the ALJ found that Plaintiff did not satisfy the criteria of Listing 11.14 (peripheral neuropathy) because her physical examinations did not show disorganization of motor function in two extremities resulting in a marked or extreme limitation in functioning. AR 26–27. Lastly, the ALJ found that Plaintiff did not satisfy the criteria for Listings 14.02 (systemic lupus erythematosus) or 14.09 (inflammatory arthritis) because the medical records did not show at least two of the constitutional symptoms or signs. AR 27.

Then, before proceeding to step four, the ALJ carefully considered the entire record and determined that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a):

> except that she can lift and carry up to 10 pounds occasionally and 5 pounds frequently, sit 6 hours total in an 8-hour workday, and stand and/or walk 2 hours total in an 8-hour workday. [She] can occasionally climb ramps and stairs, but she can never climb ladders, ropes, or scaffolds. [Plaintiff] can occasionally balance, stoop, kneel, and crouch. She can never crawl. [Plaintiff] can frequently handle, finger, and feel bilaterally. She can never work in extreme cold, extreme heat, or excessive moisture or humidity.

AR 27–28.

At step four, the ALJ found that Plaintiff was capable of performing her past relevant work as a freight clerk, service clerk, and customer order clerk. AR 38. Therefore, the ALJ found that Plaintiff was not disabled, and not entitled to DIB payments. AR at 39.

On August 12, 2024, the Appeals Council denied Plaintiff's request to review the ALJ's decision. AR at 1–7. The ALJ's decision thus became the "final decision" of the Commissioner. *See Perez v. Chater*, 77 F.3d 41, 44 (2d Cir. 1996) (citing 20 C.F.R. § 404.981) ("[I]f the Appeals Council denies review, the ALJ's decision becomes the [Commissioner]'s final decision.").

## LEGAL STANDARD

Under 42 U.S.C. § 423(d), a claimant is disabled and entitled to DIB if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."

Where an individual's application for DIB has been denied, 42 U.S.C. § 405(g) defines the process and scope of judicial review of the Commissioner's final decision.

The fourth sentence of § 405(g) authorizes the reviewing court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." The sixth sentence authorizes the reviewing court to "order additional evidence to be taken before the Commissioner . . . upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988) (discussing § 405(g)).

"The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the [Commissioner], and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having rational probative force." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal citation and quotation marks omitted). Therefore, it is not the reviewing court's function to determine *de novo* whether the claimant is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, the reviewing court must first determine "whether the Commissioner applied the correct legal standard[s]." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Provided the correct legal standards are applied, the district court's review is deferential: a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g).

"Whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)

(noting that the phrase "substantial evidence" is a term of art used in reviewing administrative agency decisions to signify evidence that amounts to "more than a mere scintilla"). Thus, once an ALJ finds facts, a reviewing court can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d at 448. Yet, although "the evidentiary threshold for the substantial evidence standard is not high, . . . [it] is also not merely hortatory: [i]t requires relevant evidence which would lead a reasonable mind to concur in the ALJ's factual determinations." *Colgan v. Kijakazi*, 22 F.4th 353, 359 (2d Cir. 2022) (internal quotation marks omitted).

## DISCUSSION

In her principal brief in this action, Plaintiff identifies five grounds upon which she believes the Commissioner's decision should be reversed: (I.) the ALJ erred when he found at step three that Plaintiff did not meet the criteria for Listing 14.02; (II.) the ALJ erred in his analysis of the credibility of Plaintiff, her husband, and her sister; (III.) the ALJ erred by rejecting the medical opinion of Certified Physician's Assistant Kellie Schwartz ("PA Schwartz") while finding the opinions of the consultative examiners to be persuasive; (IV.) the ALJ erred by failing to properly evaluate the limitations imposed by Plaintiff's combination of impairments; and (V.) that the VE's opinion was not supported by substantial evidence. ECF No. 9-1. The Commissioner maintains that the ALJ did not commit legal error, and that the ALJ's decision was based on substantial evidence. ECF No. 16-1.

After a thorough review of the record, the Court agrees with the Commissioner that the ALJ applied the proper legal standards, and made an RFC finding that was

supported by substantial evidence. For ease of discussion, the Court discusses Plaintiff's arguments out of order.

**I. Plaintiff's Credibility**

As indicated above, Plaintiff testified at her hearing before the ALJ to significant limitations caused by her various physical impairments, including an inability to sit or stand for long periods, frequent and exhausting "face flushes" due to lupus, and difficulty using her hands. *See, supra,* at 3. In addition, Plaintiff's sister and Plaintiff's husband both submitted letters detailing their perceptions of Plaintiff's limitations. Plaintiff's sister wrote in 2023 that she had noticed over the past two to three years that Plaintiff could not carry anything unless it was very light, could not sit very long, had no strength, was always tired, experienced hand cramping and back pain, and could not keep her arms up or extended. AR 454. Similarly, Plaintiff's husband wrote in 2023 that Plaintiff was unable to sit or stand for long periods of time, was unable to do day-to-day tasks at home, dropped things all the time, had a "foggy memory," and became tired and fatigued easily. AR 460. He observed that because of these limitations, Plaintiff required that he either do or help her with such things as grocery shopping, shoveling, sweeping, vacuuming, mowing the lawn, taking laundry up and down stairs, and opening jars and pill bottles. *Id.*

In his decision denying Plaintiff's application for DIB, the ALJ provided a lengthy summary of Plaintiff's testimony regarding her symptoms and found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. AR 28–29. However, "[a]fter careful consideration of the

evidence," the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." AR 29. The ALJ also summarized the statements regarding Plaintiff's condition that were submitted by Plaintiff's sister and Plaintiff's husband, but found their statements to be "not persuasive" because they were inconsistent with both the medical evidence, and in some regards with Plaintiff's own statements. AR 33–34.

In her brief, Plaintiff argues that it was error for the ALJ not to fully credit Plaintiff's testimony, as well as the statements of Plaintiff's sister and Plaintiff's husband. ECF No. 9-1 at 29–30. Specifically, she maintained that the ALJ made multiple errors in assessing her credibility, failed to appropriately credit her work history, and ignored significant evidence that her combination of severe and non-severe impairments could reasonably have caused her to have significant mental functioning. *Id.* at 30–33. With respect to the statements from her sister and her husband, Plaintiff contended that the ALJ discredited them without substantiation in the record. *Id.* at 33–34.

**A. Legal Principles**

The Commissioner's regulations define "symptoms" to mean the claimant's "own description of [his or her] physical or mental impairment." 20 C.F.R. § 404.1502(i). The regulation governing the evaluation of a claimant's symptoms, 20 C.F.R. § 404.1529, outlines a two-step process for doing so:

> First, "the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected

> to produce the symptoms alleged." [*Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010)]. Second, "[i]f the claimant does suffer from such an impairment . . . the ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record." *Id.* (cleaned up). That evidence includes the claimant's "own statements, the observations and opinions of . . . treating physicians, and the observations and opinions of other medical professionals who examined [the claimant] or reviewed his records." *Whipple v. Astrue*, 479 F. App'x 367, 370 (2d Cir. 2012).

*Castillo v. O'Malley*, No. 24-41-CV, 2024 WL 4707253, at *3 (2d Cir. Nov. 7, 2024). The evidence to be considered also includes evidence from non-medical sources such as "[f]amily members, caregivers, friends, neighbors, employers, and clergy." 20 C.F.R. § 404.1502(e)(4).

In regards to the second step, the Commissioner has issued Social Security Ruling 16-3p ("SSR 16-3p"), which "eliminat[ed] the use of the term 'credibility' from [the Commissioner's] sub-regulatory policy . . . . [and] clarif[ied] that subjective symptom evaluation is not an examination of an individual's character." *SSR 16-3p: Evaluation of Symptoms in Disability Claims,* 82 Fed. Reg. 49,462, 2017 WL 5180304, *2 (Oct. 25, 2017). Rather, consistent with 20 C.F.R. § 404.1529, ALJs must "consider all of the evidence in an individual's record . . . . [and] evaluate the intensity and persistence of an individual's symptoms [to] determine how symptoms limit ability to perform work-related activities for an adult." *Id.* "[S]ymptoms, including pain, will be determined to diminish [a claimant's] capacity for basic work activities to the extent that . . . [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4).

In addition to using all of the evidence to evaluate the limiting effects of a

claimant's symptoms, 20 C.F.R. § 404.1529(c)(3) sets forth a non-exhaustive list of factors for the ALJ to consider. This list includes the claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; and any measures other than treatment an individual uses or has used to relieve pain or other symptoms. *See* SSR 16-3p, 2017 WL 5180304, at *7.

**B. The ALJ's Evaluation of Plaintiff's Symptoms**

At the outset, the Court notes its disagreement with Plaintiff's characterization of the ALJ's decision as "finding [her] testimony not credible." ECF No. 9-1. Instead, the Court reads the ALJ's decision to explain a conclusion reached following a thorough evaluation of the consistency between Plaintiff's statements and the evidence of record, as required by the regulations and SSR 16-3p.

For instance, the ALJ observed that Plaintiff "alleged that she was not able to work due to chronic pain, rashes, dropping things, and the need to use a cane." AR 29. With respect to Plaintiff's chronic pain, the ALJ documented over three paragraphs the consistency with which Plaintiff reported her pain to her treatment providers. AR 29–30. However, the ALJ also reviewed the medical evidence in the record and pointed out that Plaintiff's "physical examinations were often normal," and only occasionally revealed mild or moderate findings, tenderness, or restrictions

between December 2019 and December 2022, and additional restriction, tenderness, or swelling only in 2023. AR 30–31. The ALJ also noted that x-rays revealed no more than what he later (*i.e.*, AR 35) characterized as "mild abnormalities," including: no abnormalities other than slight degenerative changes in Plaintiff's feet, wrists, and hands; normal hips, other than mild narrowing of both hip joint spaces; unremarkable sacroiliac joints; only mild facet arthropathy in her lumbar spine; and moderate degenerative changes in her cervical and thoracic spine. AR 31. Lumbar and cervical MRIs showed neuroforaminal narrowing in her cervical spine and hypertrophy in her lumbar spine. AR 31.

With respect to Plaintiff's complaints about dropping things, the ALJ noted that "there is no evidence that she dropped things or complained to any doctor about dropping thing[s]." AR 33. Similarly, while the ALJ acknowledged Plaintiff's complaints and pictures of her rashes due to lupus, he also noted that there was "little to no evidence that she had a rash or appeared flush during an examination." AR 33. Lastly, the ALJ observed that "treating and examining sources generally observed that Plaintiff had a normal gait," and that she was not using an assistive device to ambulate through July 2023. AR 30, 32. The "one and only reference in the medical record to [Plaintiff] using a cane" was from August 2023. AR 33 (citing AR 1857).

Further, the ALJ considered the factors set forth in 20 C.F.R. § 404.1529(c)(3). With respect to Plaintiff's daily activities, the ALJ noted that despite Plaintiff's testimony to the contrary, her reports to the agency and to the consultative examiners indicated that she "spent her days organizing the house [and] doing laundry" (AR 25),

"cooked 5 times a week, cleaned and washed laundry once a week" (*Id.*), and "was independent with bathing, dressing, and grooming herself" (AR 33). He also discussed Plaintiff's symptoms at length, her medications and their effectiveness (or lack thereof) in alleviating her symptoms (AR 32), and measures that she either tried or were recommended to relieve her symptoms (AR 32).

As to the statements submitted by Plaintiff's sister and Plaintiff's husband, SSR 16-3p requires the ALJ to "consider any personal observations of the individual in terms of how consistent those observations are with the [claimant]'s statements about his or her symptoms as well as with all of the evidence in the file." SSR 16-3P, 2017 WL 5180304 at *7. The ALJ did precisely that in this case. He noted multiple instances in which the sister's and husband's statements were inconsistent with Plaintiff's own statements, for example with respect to their observations regarding her mental state and her inability to care for herself. AR 34. And he referenced his thorough discussion of the evidence to explain why their respective "statements were not more persuasive than the accumulated medical evidence regarding the extent to which [Plaintiff]'s impairments limit her functional abilities." AR 34.

In short, the ALJ did not apply an improper legal standard that led to a baseless credibility finding. Rather, as required by 20 C.F.R. § 404.1529 and SSR 16-3p, the ALJ made a thorough review of the record and reached a reasonable conclusion supported by substantial evidence that Plaintiff's complaints were not entirely consistent with the evidence. Plaintiff's argument to the contrary is without merit.

## II. The ALJ's Step Three Findings Regarding Lupus

As noted, the ALJ found at step two that Plaintiff had the severe medical impairment of lupus. Listing 14.02 describes lupus as a chronic inflammatory disease that can affect any organ or body system, and which "is frequently, but not always, accompanied by constitutional symptoms or signs" such as severe fatigue, fever, malaise, and involuntary weight loss. 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"), § 14.00(D)(1)(a). To demonstrate the medical impairment of lupus, a claimant must show:

A. Involvement of two or more organs/body systems, with:

   1. One of the organs/body systems involved to at least a moderate level of severity; and

   2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).

or

B. Repeated manifestations of [lupus], with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:

   1. Limitation of activities of daily living.

   2. Limitation in maintaining social functioning.

   3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

App'x 1, § 14.02.

In the present case, the ALJ found that the criteria for Listing 14.02 was not met because "the medical record shows occasional complaints of fatigue, but there is no evidence of fever, malaise, or involuntary weight loss . . . . and [t]he record shows

that the claimant has no more than mild limitations in her ability to engage in activities of daily living, maintain social functioning, and complete tasks in a timely manner due to deficiencies in concentration, persistence, or pace." AR 27. In addition, the ALJ noted that Plaintiff did not use an assistive device (her cane) until August 2023, and that physical examinations revealed no persistent abnormalities in her left upper extremity and normal hand and finger dexterity bilaterally. *Id.*

Plaintiff maintains that the ALJ's finding that she did not meet the criteria for Listing 14.02 was not supported by substantial evidence. ECF No. 9-1 at 25. In fact, she argues that not only did she meet the criteria for Listing 14.02(A), but that she also met the alternative criteria set forth in Listing 14.02(B). *Id.* She contends that she meets the criteria in Listing 14.02(A) because the record evidence shows the involvement of two or more organs or body systems – her skin and her bones – and the constitutional symptoms or signs of severe fatigue and malaise. *Id.* She contends that she meets the criteria in Listing 14.02(B) because the record shows she suffers from two constitutional symptoms or signs – severe fatigue and malaise – both of which impose a marked limitation in her ability to engage in activities of daily living. *Id.* at 26.

**A. Legal Principles**

At step three of the sequential evaluation process, the ALJ is required to consider whether the claimant has a medical impairment that "meets or equals" an impairment listed in Appendix 1, the Listing of Impairments. 20 C.F.R. § 404.1520(a)(4)(iii). Further, even if a single impairment does not meet the criteria

of a listing, the ALJ must consider the combined effect of all of the claimant's impairments, "without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523(c). The claimant must be found to be disabled if his or her impairment or combination of impairments meets the criteria of any listed impairment in the listings. *See SSR 17-2p: Evidence Needed by Adjudicators at the Hearings & Appeals Council Levels of the Admin. Rev. Process to Make Findings About Med. Equivalence*, 82 FR 15263, 2017 WL 3928306 (S.S.A. Mar. 27, 2017) (discussing 20 C.F.R. § 404.1525–26). The burden is on the claimant "to present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).

If claimant has an impairment or combination of impairments that does not meet all of the requirements of a listing, the ALJ must then determine whether the impairment or combination of impairments medically equals a listed impairment. SSR 17-2p, 2017 WL 3928306 at *2. An impairment is medically equivalent to a listed impairment "if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a). If the claimant has a combination of impairments, no one of which meets a listing (see § 404.1525(c)(3)), the ALJ must consider the record in light of the most closely analogous listed impairments. 20 C.F.R. § 404.1526(b)(3).

**B. The Medical Evidence that Plaintiff's Lupus Meets Listing 14.02**

Plaintiff argues that she has met her burden to demonstrate she meets Listing 14.02 because "the evidence establishes that [Plaintiff] has . . . the constitutional

symptoms/signs of severe fatigue and malaise." ECF No. 9-1 at 25. However, the Court finds that the ALJ's conclusion in the instant case that Plaintiff did not sufficiently demonstrate that she has the constitutional symptom or sign of malaise is supported by substantial evidence. AR 27. Where the ALJ's decision is supported by substantial evidence, it is not the Court's role to reweigh the evidence. *See Cage v. Comm'r of Soc. Sec.*, 692 F. 3d 118, 122 (2d Cir. 2012) (Court must "defer to the Commissioner's resolution of conflicting evidence.") (internal citation omitted).

As defined in Appendix 1, "[m]alaise means frequent feelings of illness, bodily discomfort, or lack of well-being that result in significantly reduced physical activity or mental function." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 14.00(C)(2). Here, however, no medical record mentions the term "malaise," and the vast majority of medical records contain no indication that Plaintiff experienced the generalized discomfort or lack of well-being that the term signifies. *See, e.g.,* 523840 MALAISE, Stedmans Medical Dictionary (2014) (defining "malaise" as a "feeling of general discomfort or uneasiness, an 'out-of-sorts' feeling, often the first indication of an infection or other disease."). For instance, even records that Plaintiff points to as supporting her claims of malaise suggest that she denied depression or anxiety, appeared healthy and well developed, with no signs of acute distress, normal mood, alert and oriented, and with an intact memory. *See, e.g.,* ECF No. 9-1 at 26 (citing AR 678–80). Other instances that Plaintiff claims to demonstrate malaise instead include localized back ("was moving cabinets and back has been sore") and foot ("whole top of foot is sore") pain (AR 919), lumbar pain which doctors suggested to be consistent with "x-rays notable

for degenerative joint and disc disease in the lumbar spine" (AR 714), and thoracic and lumbar spine pain which began "perhaps when she was moving shelves" (AR 1086). Lastly, those few records which do reflect "diffuse body wide pain secondary to lupus" that might suggest malaise nevertheless also indicate that "patient remains independent . . . [b]athing, dressing, and light chores," though she did modify her activities based on her pain levels. AR 1664 (June 2023), 1678 (April 2023), 1834 (July 2023).

With respect to medical equivalence, 20 C.F.R. § 404.1526 provides that in order to find medical equivalence, the record must contain either a prior administrative medical finding from the initial or reconsideration adjudication levels supporting the medical equivalence finding, or medical expert testimony obtained at the hearings level supporting the medical equivalence finding, or a report from the Appeals Council's medical support staff supporting the medical equivalence finding. SSR 17-2, 2017 WL 3928306 at *3. Yet as the ALJ rightly noted in this case, "no accepted medical source designated to make equivalency findings concluded that [Plaintiff]'s impairments medically equal[ed] a listed impairment."

In short, the ALJ's conclusion that Plaintiff failed to meet her step three burden to demonstrate that she met or medically equaled the criteria for Listing 14.02 for lupus was supported by substantial evidence. Therefore, the Court finds Plaintiff's argument to be without merit. *See, e.g., Barrere v. Saul*, 857 F. App'x 22, 24–25 (2d Cir. 2021) ("even though an analysis of the substantiality of the evidence must also include that which detracts from its weight . . . we defer to the Commissioner's

resolution of conflicting evidence . . . .").

**III. The ALJ's Evaluation of Medical Opinions**

On August 9, 2023, Certified Physician's Assistant Kellie Schwartz, completed a "medical assessment of ability to do work-related activities" form which concluded that Plaintiff has been unable to engage in substantial gainful employment since her alleged onset date of December 2019. AR 1852–55. Among other things, PA Schwartz opined that Plaintiff was limited to carrying no more than five pounds, could stand for only two hours of an eight-hour day and only for 15 minutes at a time, could sit for only two hours of an eight-hour day and only for 15 minutes at a time, would need to recline six or seven times throughout an eight-hour day for 20 minutes at a time, could not hold small items, would drop larger items, and occasionally needed a cane to ambulate. *Id.*

In his decision, the ALJ found that PA Schwartz's assessment was not persuasive. AR 36. Referencing 20 C.F.R. 404.1520b(c), the ALJ noted that PA Schwartz's conclusion regarding the ultimate issue of disability was neither valuable nor persauasive. *Id.* Further, the ALJ found the remainder of the limitations described in the assessment to be "not persuasive" because they appeared to be based on Plaintiff's subjective complaints, were not consistent with the various physical examinations and diagnostic testing in the record, were attributed to a condition – mostly Plaintiff's back condition – which PA Schwartz's practice did not even treat, and was not supported by any functional assessments utilizing the "Modified Oswestry Disability Scale." *Id.*

Plaintiff maintains that it was error for the ALJ to find PA Schwartz's opinion to be not persuasive, while finding such opinions as those of consultative examiners Hongbiao Liu, M.D. and Todd Deneen, Psy.D. to be persuasive.

**A. Legal Principles**

Regulations effective for all claims filed after March 27, 2017 provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). *See also, e.g., Spottswood v. Kijakazi*, No. 23-54-CV, 2024 WL 89635, at *3 (2d Cir. Jan. 9, 2024) (noting that under 20 C.F.R. § 404.1520c, the ALJ "owes no special deference to any particular medical opinion in the record"). Rather, the regulations direct that the ALJ will evaluate the "persuasiveness" of all opinions and prior administrative medical findings in the record by assessing multiple factors, including supportability, consistency, the length and nature of the relationship of the source with the claimant, the source's specialization, and "other factors" that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c).

Of these factors, supportability and consistency are the most important. *See Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *1 (2d Cir. June 17, 2022) (discussing 20 C.F.R. § 404.1520c(b)(2)). Therefore, while the ALJ need not explain in his decision how he considered all of the factors, he must explain how he "considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings . . . ." 20 C.F.R. § 404.1520c(b)(2).

Supportability refers to how "the objective medical evidence and supporting explanations presented by a medical source . . . support [the medical source's] opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(c)(1). Consistency refers to how similar "a medical opinion(s) or prior administrative medical finding(s) is with the evidence" in the record. 20 C.F.R. § 404.1520c(c)(2).

In conducting this evaluation, "[a]n ALJ is prohibited from 'playing doctor' in the sense that an ALJ may not substitute h[er] own judgment for competent medical opinion . . . ." *Elizabeth P. v. Comm'r of Soc. Sec.*, No. 1:23-CV-00652 EAW, 2024 WL 2812434, at *7 (W.D.N.Y. June 3, 2024) (quoting *Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017)). Nevertheless, the regulations make clear that the ALJ – and not the claimant's medical sources – is responsible for making the determination or decision about whether the claimant is disabled. 20 C.F.R. § 404.1520b(c)(3). Thus, it is up to the ALJ to weigh the conflicting evidence in the record. *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998).

**B. The ALJ's Opinion Analysis**

The Court finds that the ALJ adequately considered the "supportability" and "consistency" of PA Schwartz's opinion. Under the relevant regulations, the supportability factor requires the ALJ to evaluate the extent to which "the objective medical evidence and supporting explanations presented by a medical source . . . support his or her medical opinion(s)." 20 C.F.R. § 404.1520c(c)(1). Here, PA Schwartz's opinion does not cite to any evidence from her examinations or even those of her practice, InvisionHealth, and provides only vague or generalized explanations

of Plaintiff's limitations. *See, e.g., Sandra M. v. Comm'r of Soc. Sec.*, No. 3:22-CV-00485-TWD, 2023 WL 4972707, at *10 (N.D.N.Y. Aug. 3, 2023) ("It is well within the ALJ's discretion to reject a medical opinion when there is a lack of evidence supporting the limitations . . . ."); *see also, Briana R. v. Comm'r of Soc. Sec.*, No. 23-CV-0410-LJV, 2025 WL 2653097, at *5 (W.D.N.Y. Sept. 16, 2025) (collecting cases in support of the proposition that "an ALJ does not err in discounting those parts of a medical opinion that appear to be based on little more than subjective complaints."). With respect to the "consistency" of PA Schwartz's opinion, the ALJ noted that PA Schwartz's assessment was "not consistent with the various physical examinations, diagnostic testing showing mild abnormalities," or Plaintiff's own reports of her activities, which the ALJ had previously examined at length in his decision. AR 36; *see also* AR 29–32.

The ALJ's analysis of Dr. Liu's and Dr. Deneen's respective opinions were also similarly consistent with 20 C.F.R. § 404.1520c. In discussing the results of Plaintiff's physical examinations, the ALJ observed that "[d]uring the consultative examination [with Dr. Liu], [Plaintiff]'s physical examination revealed no abnormalities other than limited lumbar motion, positive straight leg raising tests bilaterally . . . and decreased bilateral shoulder motion . . . ." AR 31. Then, in discussing Dr. Liu's opinion that Plaintiff had only mild physical limitations, the ALJ noted that that Dr. Liu "did not have a good longitudinal view of [Plaintiff]'s impairments or functional limitations," but also noted that the limitations he identified were based on an examination. AR 35 (citing AR 843–46); *see also Stacie L.S. v. Comm'r of Soc. Sec.*,

No. 5:24-CV-01042 (AMN/ML), 2025 WL 2933283, at *9 (N.D.N.Y. Sept. 2, 2025), *report and recommendation adopted sub nom. Stacie Lynn S. v. Comm'r of Soc. Sec.*, No. 5:24-CV-01042 (AMN/ML), 2025 WL 2751148 (N.D.N.Y. Sept. 29, 2025) (collecting cases in support of the proposition that reference to the consultative examiner's examination report is an adequate articulation of the supportability factor). Further, the ALJ found Dr. Liu's opinion to be "consistent with [Plaintiff]'s subjective complaints, the various results [of] physical examinations, diagnostic testing showing mild abnormalities, and [Plaintiff]'s activities . . . ." AR 35.

The ALJ approached his analysis of Dr. Deneen's opinion in the same way. In discussing at step two the evidence regarding the "paragraph B" criteria for evaluating limitations in mental functioning, the ALJ frequently referenced Dr. Deneen's findings from his examination. AR 24–26 (citing AR 1195–99). Then, when reviewing the opinion evidence, the ALJ noted the longitudinal limitations of Dr. Deneen's opinion that Plaintiff's psychiatric problems were not significant enough to interfere with her ability to function on a daily basis, given that he only examined Plaintiff once. AR 36. But the ALJ nevertheless found that Dr. Deneen's opinion was consistent with Plaintiff's subjective complaints, "essentially normal mental status examinations," vocational background, the lack of treatment except for prescriptions by her primary care physician, and her activities. AR 36–37.

In sum, as it relates to his evaluation of PA Schwartz's, Dr. Liu's, and Dr. Deneen's opinions, the ALJ adequately considered both the supportability and consistency factors as required by 20 C.F.R. § 404.1520c, and supported his

considerations with substantial evidence. *See Teena H. o/b/o N.I.K. v. Comm'r of Soc. Sec.*, 521 F. Supp. 3d 287, 292 (W.D.N.Y. 2021) ("Absent a legal error, the Court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the Court might have ruled differently had it considered the matter in the first instance.") (internal citations omitted).

**IV. Plaintiff's Remaining Arguments**

Lastly, Plaintiff argues both that the ALJ failed to properly evaluate her combination of impairments (ECF No. 9-1 at 36–38), and that his finding at step four that Plaintiff could perform her past relevant work was not based on substantial evidence (*Id.* at 38–40). With respect to her combination of impairments, Plaintiff contends that "[t]he ALJ improperly failed to consider many of [Plaintiff]'s medical conditions and symptoms because he improperly evaluated her credibility, which was critical to his" step two determination. ECF No. 9-1 at 37. As noted above, however, the Court is not persuaded by Plaintiff's argument that the ALJ improperly evaluated her credibility, and therefore finds her argument in this regard to be without merit. *See, supra*, at 9–12.

The Court likewise finds Plaintiff's argument that the ALJ's reliance on the VE's testimony was erroneous to be without merit. ECF No. 9-1 at 38. The crux of Plaintiff's argument in this regard is not that the VE's testimony was not supported by substantial evidence, but rather that the hypothetical questions the ALJ asked her did not sufficiently mirror Plaintiff's residual functional capacity and therefore failed to account for Plaintiff's limitations. *Id.* at 40. In other words, Plaintiff's

argument is not actually about the erroneous application of a legal standard, but rather about whether the ALJ's RFC determination is supported by substantial evidence. The Court has already found that Plaintiff's challenges to the evidence supporting the ALJ's determinations are without merit, and declines Plaintiff's request to reweigh the evidence in her favor under the guise of evaluating a legal error. *See, e.g., Melody B. v. Comm'r of Soc. Sec.*, No. 21-CV-432S, 2023 WL 355052, at *4 (W.D.N.Y. Jan. 23, 2023) (citing *Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016)) (noting that the deferential standard of review prohibits a reweighing of the evidence).

## CONCLUSION

For the foregoing reasons, Plaintiff Christine N.'s motion seeking reversal of the Commissioner's final decision [ECF No. 9] is denied, and the Commissioner's motion for judgment on the pleadings [ECF No. 16] is granted. The Clerk of Court is directed to enter judgment on behalf of the Commissioner and close this case.

SO ORDERED.

DATED: September 17, 2026
Rochester, New York

HON. MEREDITH A. VACCA
United States District Judge